HETTA W. GILBERT, Executrix of the Estate of W. D. GILBERT, Deceased, v. F. O. ADAMS, Appellant.

**Principal and Surety:** SUBROGATION: *Promise to pay draft upon consideration.* B gave Adams a bill of sale conveying certain corporation stock, agreeing to deliver the certificate within thirty days. After this was written out, they added fifty shares described as being held and mortgaged to German bank. No shares were delivered within thirty days. Adams was secretary of the corporation, and entered the transfer to himself on its books, recognizing in the entry that the shares were mortgaged, and he was given a power to vote the stock for six months. Having made a note to said bank on which Gilbert was security, B induced Adams to agree in writing that he would pay off the note held by the bank, in consideration of the fifty shares added to the bill of sale, and B assigned this contract to Gilbert, mailing him the assignment. In the letter, he asked Gilbert to allow said note to be extended, and that a policy held by Gilbert be returned, if consent were given. The policy was not returned. Still later, B assigned said fifty shares to Gilbert to indemnify him against being surety on said note. It was sent to A, to be indorsed on the books of the corporation, and he declined to make the entry on the ground that he held the same stock by the bill of sale. Gilbert was compelled to pay the note to the bank. *Held;*

a. The consideration for Adams' agreement to pay the note did not fail because B failed to deliver the certificates within the thirty days. Construing the various writings and the acts of Adams together, it is clear that no present delivery was intended.

b. There was no failure to consummate the Adams agreement because B assigned the fifty shares to Gilbert. This assignment was abortive, and ineffectual, and should be deemed abandoned, for the reason that the bank was entitled to the possession of the shares; they were already transferred to Adams, and the latter insisted on the validity of the transfer to him.

c. It is not material that Gilbert failed to return the policy, for it appears clearly, despite the failure to return it, that Gilbert accepted the assignment of the contract to pay the note on which Gilbert was surety, made by Adams; for the bank accepted said assignment with knowledge that the shares had been transferred to Adams and both Gilbert and Adams insist that the agreement was transferred to Gilbert. When Gilbert paid off the note, he sued on the agreement, and the evidence tends to show that Gilbert remained surety and obtained an extension on the strength of the agreement.

d. This agreement could be enforced by the bank, although it was not party to it, and when Gilbert paid it the note upon which he was surety, he became subrogated to its rights, and could enforce said agreement without its being assigned to him.

e. Under this subrogation, he became entitled to the possession of the shares hypothecated to the bank. If he took them, he had the right to hold them until reimbursed for paying the note. If he did not take them, it was the duty of the bank to restore them to the rightful owner, and Gilbert is not chargeable with its dereliction. Hence, it is not material that he did not surrender said shares to Adams.

**Pleadings and Practice:** AMENDMENT DURING TRIAL. A cross-bill or counter-claim which defendant fails to file till near the close of a trial lasting two days, may properly be stricken out, on plaintiff's motion, as filed too late.

**Appeal:** ABATEMENT. An appellant whose property has been seized on execution, on account of his failure to file a supersedeas bond, cannot be held to have acquiesced in the judgment from which he has appealed, because he consents that some of the property so seized, may be sold at a specified price, and the proceeds credited on the execution.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

SATURDAY, OCTOBER 24, 1896.

ACTION at law upon a promise of defendant to pay a debt of one W. D. Gilbert (plaintiff's testator) and one Brenizer to the German-American Savings Bank which debt the plaintiff paid before the commencement of this suit. The defense is a general denial, and want and failure of consideration for the alleged agreement. Defendant also pleaded that the consideration for his agreement was a promise on the part of Brenizer to deliver to him fifty shares of stock in the Butman Furnace Company; that Brenizer failed to comply with his agreement, but, on the contrary, transferred the stock to W. D. Gilbert. In reply, the plaintiff denied the transfer of the stock to Gilbert. Afterwards, and on the day after the case was called for trial, defendant filed a counter-claim against Brenizer, and asked that the same be offset against plaintiff's claim. Plaintiff moved to strike this cross-bill, and the motion was sustained. On the issues thus formed, a trial was had to a jury. At the conclusion of the evidence, the plaintiff moved for a verdict. This motion was also sustained, and from the judgment rendered on the verdict defendant appeals. —*Affirmed.*

*Seerley & Clark* for appellant.

*Blake & Blake* for appellee.

DEEMER, J.—On the sixteenth day of April, 1892, Ezra A. Brenizer and W. D. Gilbert executed to the German-American Savings bank their note for two thousand dollars, bearing eight per cent. interest, due

six months after date. It is claimed by plaintiff that Brenizer was the principal on the note, and Gilbert was a surety, only; and that Brenizer, in order to induce Gilbert to consent to an extension of the time of payment, and to induce him to remain as surety thereon, assigned to him the following contract.

"Memorandum of agreement, made and entered into this thirteenth day of December, 1893, by and between Ezra A. Brenizer, of Chicago, Cook county, Illinois, first party, and F. O. Adams, of Burlington, Iowa, second party, witnesseth: In consideration of a bill of sale, made and delivered this day of certificate number two (2), representing fifty (50) shares of the capital stock of the Butman Furnace Company, of Chicago, state of Illinois,—said certificate now being held by and hypothecated to the German-American Savings Bank, of Burlington, Iowa, for a note of two thousand dollars ($2,000) made by party of the first part,—party of the second part hereby agrees to assume payment of said note on or before six (6) months from this date, with interest at the rate of seven (7) per cent. per annum until paid. In witness whereof, said parties have hereunto subscribed their names, the day and year first above written. Ezra A. Brenizer, F. O. Adams.

"In the presence of T. R. Butman, as witness."

The contract of assignment was as follows:

"Chicago, Ills., March 6, 1894. For the purpose of indemnifying W. D. Gilbert from liability as surety on my note for $2,000.00, held by the German-American Savings Bank, of Burlington, Iowa, I hereby assign to him the agreement between F. O. Adams and myself, of date December 13th, 1893, for the purchase of fifty (50) shares of the stock of the Butman Furnace Co., of Chicago, together with all my claim under and by virtue thereof against said F. O. Adams. Witness my

hand this, the day and date above written.     Ezra A. Brenizer."

Plaintiff claims that her testator, relying upon the defendant's contract, induced the bank to extend the time of payment of its note until the thirteenth day of June, 1894. She also claims that after the death of Gilbort, and on or about the twenty-ninth day of August, 1894, she, as executrix of his estate, was compelled to, and did, take up the note, and she brought this action to recover of defendant the amount she paid upon the contracts and agreements above set forth. She recovered judgment in the lower court for the amount she was compelled to pay to take up the note, and the defendant appeals.

I.   The appellee has moved to dismiss the appeal, because the appellant has recognized the validity of the judgment, and has paid a portion thereof.

The facts which it is claimed support this motion are as follows:

No supersedeas bond was filed by appellant, and on the 26th day of June, 1895, an execution was issued, and on the twenty-eighth was levied upon a large amount of personal property. This property, so levied upon, was advertised for sale. Shortly before the day of sale, the parties entered into an agreement, in writing, as follows:

"In the matter of the excution of Gilbert, executor, vs. Adams, it is agreed that the property levied on may be sold as old iron to Marcus Meyer, at $4.00 per ton, and amount realized credited on the execution. August 9th, 1895.   [Signed] Blake & Blake, Attorney for Gilbert.   F. O. Adams."

Pursuant to this agreement, the property was sold, and the sum of sixty-six dollars was applied upon the judgment.

These facts are shown by an amended abstract, filed by appellee.   It is doubtful, to say the least,

whether they can be considered, for the reason that these matters all occurred after the trial record was closed. But, conceding that they may be, we do not think there was such a performance of the judgment by the appellant, as to estop him from prosecuting his appeal. His payment was not voluntary, and was not such a recognition of the judgment as ought to estop him from proceeding with the appeal. *Green v. Hall* (Neb.) (61 N. W. Rep. 605).

II. The defendant complains of the ruling of the court on plaintiff's motion to strike his cross-bill, or counter-claim. This motion was properly sustained; if for no other reason, because it was filed too late. The case was called on the twenty-fifth of February, and the cross-bill was filed on the twenty-sixth, near the close of the trial. A large discretion is vested in the court in such matters, and it does not appear to have been abused in this case.

III. It is conceded that plaintiff may maintain this action in her own name upon the contract made by defendant with Brenizer, and which was assigned to W. D. Gilbert. But the defendant claims that there was a failure of consideration for his contract, and that it should not be enforced. This is the controlling question in the case, and, for a correct solution of it, reference must be had to the facts which are disclosed by the record. The bill of sale, which is referred to in the contract upon which this suit is predicated, was made on the same day as the contract, and, so far as material, is as follows:

"Know all men by these presents, that Ezra A. Brenizer, of the city of Chicago, in the county of Cook, and state of Illinois, party of the first part, for and in consideration of the sum of thirty-five hundred ($3,500.00) dollars, lawful money of the United States of America, to him in hand paid, at or before the ensealing and delivery of these presents,

by Frank O. Adams, of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, and by these presents does grant, bargain, and sell, unto the said party of the second part, all the following goods, chattels, and property, to-wit: Sixty-five (65) shares of the capital stock of the Butman Furnace Company, an Illinois corporation, of the par value of one hundred dollars ($100.00) each. Said stock is evidenced by the following certificates, to-wit: No. 3, one (1) share; No. 29, twenty-four (24) shares; No. 35, ten (10) shares; No. 36, ten (10) shares; No. 37, ten (10) shares; No. 38, ten (10) shares. And I agree to deliver said certificates within thirty days from the ensealing and delivery of these presents. Also, certificate No 2, fifty (50) shares of above described capital stock of the Butman Furnace Company, which is now held by and hypothecated to German-American Savings Bank of Burlington, Iowa, to secure a promissory note (of Ezra A. Brenizer) for two thousand ($2,000.00) dollars."

At the time this bill of sale was made, Adams held a power of attorney from Brenizer, made on the seventh day of December, 1893, authorizing him (Adams) to vote the fifty shares of stock referred to in the bill of sale, at all meetings of the furnace company for the period of six months. When the defendant purchased the stock transferred by the bill of sale, he was secretary of the furnace company; and we find on a stub in the stock book of the company, an entry, under date of December 13, 1893, which is, in part at least, in the hand-writing of Adams, as follows: "Transferred by bill of sale to F. O. Adams, Dec. 13th, 1893, held as security by German-American Savings Bank of Burlington, Iowa, as collateral security for a note of E. A. Brenizer.

Afterwards, and on or about February 10, 1894, Gilbert, on the advice and recommendation of an

attorney, secured from Brenizer the following assignment of the fifty shares of stock covered by the bill of sale, to-wit (Exhibit E):

"For value received, and for the purpose of securing W. D. Gilbert from any liability on my note in favor of the German-American Savings Bank, the said note being for the sum of two thousand ($2,000.00) dollars, and said Gilbert being security thereon, I hereby assign to him certificate No. two for fifty (50) shares of one hundred ($100.00) dollars each, of the stock of the Butman Furnace Company of Chicago, Illinois, and authorize the officers of said company to make the proper transfer of said stock on the books of the company. Ezra A. Brenizer. February 10, 1894."

This assignment was sent to the furnace company, and in reply the furnace company wrote the following letter, which was dictated and signed by Adams:

"Chicago, March 1, 1894. (Dictated by F. O. A.) Messrs. Gilbert, Hedge & Co., Burlington, Iowa—Gentlemen: In reply to your favor of the 27th ult., would state that E. A. Brenizer gave a bill of sale on the 13th day of December, 1893, for certificate No. two of fifty shares of the stock of the Butman Furnace Co., of Chicago, Ill., and in accordance with which entry has been made upon our books. This being two months prior to the instrument herein inclosed, we cannot see that this can be of any advantage to you. Mr. Burdette was in our office some time ago, and saw how entry was made, and he can give you full information relative to the same. We have taken copy of this assignment, and return the original to you. We think you are as fully protected as it is possible for you to be, but, at any time we can be of any service to you, please advise us, and we will do anything we can within our power. Yours, very truly, Butman Furnace Co., per F. O. Adams, Treas."

It is also important to note that, on the same day the bill of sale and agreement between Brenizer and Adams were executed, Brenizer wrote Gilbert a letter, of which the following are material parts:

"Butman Furnace Company.   Chicago, December 13, 1893.   My dear Mr. Gilbert: I hand you by inclosed mail an agreement made this day with F. O. Adams, of Burlington, whereby he agrees to pay my note at the German-American Savings Bank.

Mr. Adams says he may pay the same inside of 60 days, but wishes the privilege of six months in case he don't get his collections in. I am very sorry to ask your indulgence longer, but fate compels it. * * * I think Mr. Adams' guarantying the payment of the note will give you double assurance of the payment of same during the next six months. You retain the five thousand stock in the above-named company as additional security. If the above is satisfactory, please return me the insurance policy you hold, and oblige. Awaiting your further pleasure by return mail, I remain, yours truly, E. A. Brenizer."

Now, the exact claims made by defendant are: (1) That there was a failure of consideration for his contract with Brenizer, in this: that Brenizer agreed to deliver the fifty shares of stock within thirty days from the date of the contract, which he claims Brenizer never did. (2) That Gilbert never accepted the proposition of Brenizer contained in the letter of December 13, because he failed to return the policy of life insurance referred to in that letter.

In determining the first point, it becomes necessary to construe the various instruments which were executed on December 13. The evidence shows that all that part of the bill of sale referring to the fifty shares of stock was written in after the bill of sale for the sixty-five shares was fully written out, and ready

for the signature of the parties. The consideration
for the sixty-five shares was the three thousand five
hundred dollars mentioned in the instrument. It is
agreed that the consideration for the fifty shares was
the agreement of Adams to pay the note to the Ger-
man American Savings Bank. At the time the bill
of sale was executed, the fifty shares of stock were
held by the bank as collateral security, and there is
no evidence that the bank ever agreed to release its
lien thereon. Defendant's real contention here is
that Brenizer agreed, by the terms of the bill of sale,
to deliver the fifty shares of stock to him (Adams)
within thirty days; that Brenizer failed to do so; and
that, for this reason, there is no consideration
for his promise to pay the note. If there were
no other contract than the bill of sale, it is,
no doubt, true that the instrument should be con-
strued according to the defendant's interpretation
of it; that is to say, that the fifty shares, as well
as the sixty-five, should be delivered to Adams within
thirty days. But when we consider the other instru-
ments which were executed at the same time, the
situation of the parties, the transfer of the stock
upon the books of the company by Adams himself,
and all the attending circumstances, it becomes clear
that no present delivery of the fifty shares of stock
to Adams was contemplated. It is manifest that
Brenizer could not deliver the stock without the
consent of the bank. This Adams knew. And
it further appears that the bank had nothing to do
with the contract between Brenizer and Adams. All
of these writings recognize the lien of the bank, and
none of them undertake to cancel or release it. Adams,
in his letter of date March 1, 1894, recognizes the
validity of the transfer to him, and insists upon it. No
claim was made at the time that his contract was not
binding because of non-delivery of the stock. Under

the rule announced in the case of *Meyer v. Houck*, 85 Iowa, 319 (52 N. W. Rep. 235) (wherein we held that the trial judge should sustain a motion to direct a verdict when, considering all the evidence, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party on whom the burden of proof rests), we are constrained to believe that there was no error in sustaining the motion in this case.

It is argued, however, that the agreement between Brenizer and Adams was never consummated, because of the transfer of the stock to Gilbert as collateral, as shown by the instrument of date, February 10, 1894. It will be noticed that this assignment was for the purpose of securing Gilbert from liability on the note to the bank. It did not undertake to transfer an absolute title, and was ineffectual, because the bank, which then held the stock as collateral, was obliged to retain it for the benefit of Gilbert, who was a surety only on the note. It was also ineffectual because the books of the corporation disclosed that the stock had been sold and transferred to Adams, subject to the lien of the bank thereon. Again, when Gilbert presented this stock for transfer on the books of the corportion, Adams insisted upon the validity of his purchase, and the attempted transfer to Gilbert was evidently abandoned, and the assignment of the Adams contract was made in lieu thereof. An abortive attempt by Brenizer to transfer the stock would have no effect upon the transaction between Brenizer and Adams, except in so far as this circumstance may be considered as an evidentiary fact bearing upon the real issue between the parties. We have so considered it, and do not find in this anything to change our conclusion that the bill of sale from Brenizer to Adams transferred the title

of the stock to Adams, in consideration of which Adams agreed to pay the note to the bank.

It is also said that Gilbert never accepted the agreement made by Adams with Brenizer, because he failed to return the policy of life insurance, which, it appears, Gilbert held as additional security. Gilbert did not return the policy referred to by Brenizer in his letter of December 13, and it may be that there was no acceptance of Brenizer's offer contained in that letter. But it further appears that an unconditional assignment of the Adams agreement was made to Gilbert on the sixth day of March, 1894, which is set out in full in the former part of this opinion. This assignment was accepted by the bank after it discovered that the fifty shares of stock had been transferred to Adams on the books of the company. That Gilbert did not return the policy of insurance to Brenizer, as requested in the letter of December 13, is entirely immaterial in this controversy. Another view of this branch of the case is equally conclusive. Gilbert was a surety on the note. Brenizer was principal. Adams, for a valuable consideration, agreed to pay the note. This agreement could be enforced by the bank, the payee of the note, although it was not a party to it. When Gilbert's executrix paid the note, she not only had a cause of action against Brenizer, but she was also entitled to be subrogated to all the rights of the bank, not only against Brenizer, but as against any one else who was primarily liable for the debt. Without any assignment of the Adams contract, plaintiff, representing Gilbert, who was surety on the note, had the right to rely upon and enforce the Adams agreement after having paid the note to the bank. These propositions are elementary, and we need but cite 2 Brandt, Sur. section 324, in support of the rule. Moreover, both

Gilbert's representative and Brenizer are now insisting that there was a transfer of the agreement to Gilbert; and the evidence tends strongly, if not conclusively, to show that Gilbert secured an extension, and consented to remain a surety on the note, on the strength of Adams' promise. In view of these facts, it is difficult to see on what theory defendant can say that Gilbert did not accept Brenizer's offer of the Adams contract as security.

IV. Appellant claims that the court was in error in sustaining objections to questions showing that no delivery of the fifty shares of stock had ever been made, or offered to be made, to him. If we should adopt his construction of these contracts, there would be no doubt of the correctness of his position. But, as we do not do so, we do not think it was material for him to show that the stock had not been delivered. Brenizer did not promise to deliver the stock at any particular time. Defendant's promise was made in consideration of the bill of sale, which was then made to him of the stock held by the bank as collateral security. The bank had the rightful possession of it at the time the contracts were made, and was not obliged to surrender it to any one until the note was paid. When the executrix paid the note, she was entitled to the shares of stock, by virtue of her right of subrogation, but she was not obliged to accept it. If she did accept it, she could hold it until she was reimbursed for the payment she made on the note, and was not obliged to surrender it until this obligation was extinguished. If she did not accept the stock, then it was the duty of the bank to return it to the rightful owner, and plaintiff should not be charged with any dereliction on its part. The non-delivery of the stock was wholly immaterial and irrelevant to the issues presented.

Some other questions are argued by counsel, but they are all met by what has been said in the course of the opinion, and need not be further considered. We have gone over the entire record, and find no error. The judgment is therefore AFFIRMED.