E. R. HANES, Appellee, v. WILLIAM SEE et al., Appellants.

**APPEAL AND ERROR:** Right of Review—Involuntary Performance of Judgment—Effect—Forcible Entry and Detention. An involuntary performance of a judgment does not waive the right to review on appeal. So *held* where defendant in forcible entry and detention involuntarily vacated the premises in order to avoid a forcible removal by the constable who was present with an order of removal. (See Sec. 4220, Code, 1897.)

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

FRIDAY, MARCH 17, 1916.

ACTION of forcible entry and detainer. Question involved

right of defendants to maintain an appeal after surrendering possession of the premises in controversy to the constable, who came armed with a writ of ouster, it appearing that the constable threatened to serve the writ and oust the defendants if they did not remove peaceably. Judgment for the plaintiff in the court below. Defendants appeal.—*Reversed.*

*L. A. Smyres* and *J. E. Holmes,* for appellants.

*S. B. Allen,* for appellee.

GAYNOR, J.—On the 12th day of April, 1912, the plaintiff brought an action of forcible entry and detainer against the defendants in justice court, and in her petition claimed that, on the 20th day of August, she leased to the defendants certain premises containing about 30 acres, for the term of one year, beginning with the 6th day of September, 1910; that plaintiff was, at the time of the making of said lease, and at the time of the commencement of the action, the owner of the leased premises. In said petition, plaintiff further alleged that the defendants had violated the terms of their lease, in that they had not paid rent as provided in the lease, and had not performed other conditions of the lease, and further alleged that defendants had not exercised the option of continuing on said premises after the expiration of the year, as provided in the lease; that, on the 2d day of April, 1912, the plaintiff served a written notice on the defendants to quit and surrender possession of the premises to her; that this they refused to do, and maintained possession in violation of their lease. She prayed therefore that the defendants be removed from the premises, and that she, plaintiff, be put in possession. To plaintiff's petition in justice court, the defendants filed answer, in which they say that they admit that plaintiff served notice to quit as alleged; that they (the defendants) are in possession; but say that they are rightly in possession,

APPEAL AND ERROR: right of review: involuntary performance of judgment: effect: forcible entry and detention.

because, on the 5th day of September, 1911, and before the expiration of the year provided for in the written lease, they did exercise their option to continue on said premises for a further term of four years, and orally notified plaintiff of the same; and further say that they have had the peaceable and uninterrupted possession, with the knowledge of the plaintiff, for more than 30 days after the alleged cause of action accrued, if it did accrue; and that plaintiff is now estopped and barred from maintaining this action, under Section 4217, Code, 1897. They further say that they are occupying the premises as a farm and cultivating the same as such, and that the notice served upon them to quit was not served to terminate the tenancy on the 1st day of March, as required by Section 2991, Code, 1897. Wherefore, they ask that the plaintiff's petition be dismissed.

Upon the issues thus tendered, the. cause was tried in the justice court, and judgment entered for the plaintiff as prayed, and from the judgment so entered, the defendants appeal to the district court. Upon the appeal's coming to the district court, the plaintiff filed a supplemental petition, in which she states that, subsequent to the hearing in the justice court, the defendants settled and compromised and disposed of the case, in that the defendants, by virtue of the terms of their lease, were to take care of certain stock belonging to the plaintiff more particularly shown in the lease, and were to take care of certain stock belonging to themselves, and to divide the proceeds and increase according to the terms of the contract; that the lease provided that, if any difficulty arose, a compromise might be had by arbitration; that, after the decision went against them in the justice court, the defendants voluntarily surrendered all the stock referred to in the lease belonging to the plaintiff, and took their stock and moved it from the premises; that the settlement was verbal and as' follows: It was agreed that the defendants were to have the first choice of two calves and seven pigs, and in consideration therefor were to surrender to the plaintiff the

cows and the farming tools and implements belonging to the plaintiff, and used in connection with the premises; that, in pursuance of said agreement, the defendants did select the calves and pigs as aforesaid, and did take them and move them from the premises and left plaintiff's property upon the demised premises, and vacated the premises; that, by so doing, they waived the right to appeal. Plaintiff further says that, since the defendants have vacated the premises and removed the stock, they are not in a position to perform the conditions of their lease, in that they voluntarily divided the stock, chickens, and other property, and, since said time, have disposed of the same, and have placed themselves in such a position that it will be impossible for them to carry out their part of the contract, even if they should succeed in this action and be restored to the property, and therefore that they are not entitled to maintain the appeal. To this supplemental pleading, defendants filed a general denial, and the cause was tried upon these issues in the district court. At the conclusion of all the testimony, both parties moved for a directed verdict.

Plaintiff based his motion on the following grounds:

First. For the reason that, after the case was tried in the justice court below, and after notice of appeal, the case was settled, compromised and disposed of, and the defendants moved out of the place voluntarily, after having accepted the proposition from the plaintiff.

Second. That the evidence is uncontradicted that a proposition was made to the defendants, and that no writ was ever served upon either of the defendants to eject them, and they accepted the proposition to, and did voluntarily, move from the premises in question, after being given two days to secure an adjustment.

Third. That the evidence discloses that the defendants have voluntarily placed themselves in such a position that, if they were awarded the possession of the premises and permitted to go back, they could not now comply with their lease, for the reason that an adjustment and disposition of

the property involved in the lease were such that it became thereafter impossible for them to perform their lease.

Fourth. That the evidence conclusively shows that the defendants have no right to be restored to the possession of the premises.

This motion was sustained, and the court directed a verdict for the plaintiff, and overruled defendants' motion, and entered judgment for the plaintiff, confirming possession of the property in the plaintiff, and assessing the costs made in the trial of said cause against the defendants. From this the defendants appeal.

The only parts of the lease material to the controversy here presented are as follows: The parties are to divide all the produce, consisting of crops, fruit, etc., grown upon the premises, and all the increase in stock, chickens and eggs, equally, except as provided in the lease; the first party to furnish 100 hens and roosters, and the second party, the same number, these to be kept upon the premises. In case of a division of chickens, each party is first entitled to select the original number of fowls placed by him on the place, and an equal division is to be made of what is left; the first party to leave on the premises two cows and two calves that are now there, the milk from the cows to be divided equally; the heifer calf to be kept on the place and the steer calf to be fattened and killed and divided equally; the accumulated stock upon the premises to be divided equally; all original stock placed on the premises by either party to remain his; the increase to be divided equally; all crops raised on the premises to be fed to the stock, but if there is more than sufficient for that purpose, the same is to be sold by the second party, and the proceeds divided equally. There were then certain provisions in the lease requiring the defendants to do certain things involving the care and preservation of the premises. It was further stipulated and agreed that, if the lessees failed to pay rent at the time stipulated, or make default in any of the covenants, they forfeited all their rights under the lease, and

the lessor could recover possession by action of forcible entry and detainer. It was further provided that the lease was to commence on the 6th day of September, 1910, and continue for one year, and the second party was to have the option of continuing on the premises for four years thereafter, provided that they had previously acted in conformity with the terms of the lease. Under this lease, the defendants took possession, and there is no showing that all the terms of the lease were not complied with by the plaintiff as to furnishing stock, chickens, etc. The defendants continued in possession during the first year as provided in the lease, and we must assume— because there is a controversy as to this fact—that defendants elected to avail themselves of their option to continue for four years longer.

It is apparent, then, from this record that, at the time that the action was commenced in the justice court, the defendants were in possession of these premises under a lease from the plaintiff, and were rightly there, unless by their conduct they forfeited their right to continue in possession under the terms of the lease, as alleged by plaintiff in her original petition. The grounds on which the plaintiff seeks to avoid the lease and oust the defendants, as alleged in her original petition, are that they, while in possession under the lease, have violated the terms of the lease, in that they have not paid the rent as provided in the lease, and have not performed the conditions of the lease.

When the case reached the district court on appeal, the cause was there tried and disposed of upon the allegations of the supplemental petition, and this petition presents the claim that, subsequent to the trial in the justice court, the defendants had settled and compromised the controversy involved in the suit, and had voluntarily divided the property on the premises and surrendered the possession of the premises to the plaintiff. It is claimed that there was a consideration for this settlement, in that the defendants were given a *first choice* in the division of the property, which right they did not

possess under the lease. The record discloses that, after the trial in the justice court, and after judgment had been entered for the plaintiff, an execution was issued for the removal of the defendants from the premises; that this execution was delivered to one Oley Landey, a constable in and for that township, for service; that this writ or execution so issued was in the following form:

"TO THE CONSTABLE OF SAID COUNTY—GREETING: WHEREAS judgment in favor of E. R. Hanes and against Wm. See & Sina See that the said Wm. See & Sina See be removed from the premises as follows, to wit: N. E. 30 acres of the S. W. ¼ of Section 33, Twp. 80, Range 24, Crocker Twp., Polk County, Iowa, and that the said Wm. See & Sina See be out in possession thereof and for $32 costs of suit was recovered on the 14th day of March, A. D. 1912, before me, L. D. Winehart, a justice of the peace for the township of Crocker, county and state aforesaid. These are therefore in the name of the state of Iowa, to command you that forthwith you remove said Wm. See & Sina See in possession thereof, and that of the goods and chattels of the said Wm. See & Sina See (except such as the law exempts) you cause to be made the said costs by distress and sale thereof according to law, and of this writ make legal service and due return of this writ at my office in said township within thirty days of this date."

With this writ in his possession, this constable went to the premises occupied by the defendants and notified them that he had the writ in his possession. The husband of the defendant testifies, touching what occurred after Landey reached there with the execution in his possession, as follows:

"He came to my place early in the morning. He came with a spring wagon, and a team. He said that Hanes made him a proposition to fetch to me, and I said, 'On what terms, and what kind of a proposition did he send?' 'Oh,' he says, 'he has agreed to go ahead and divide the hogs and calves and he sent me down to see if I could get a division,' and I says, 'I have no right to make a division with him of the stock here.

I have an interest in all the stock.' He told me, he says, 'You could go to work and have your choice of the pigs, and have four or three. You could have the four smallest, or the three largest ones in the division of the pigs, and also you could have your first choice out of the calves, and if you don't take those I'll have to move you out into the woods, or out into the big road.' He fetched his team for that purpose. He told me if I did not accept the proposition he had a man hired who was going to take all the stock and he had Charley Harvey hired to come down to help get the hogs and drive the cattle out. Q. That was upon the condition that you did not accept his proposition? A. Yes, sir. That is what he told me. Q. What was said in reference to your moving, or when you could move? A. There was no limit to it. If I took the division of the stock that he would give me until the next morning to get out of there. I had to get out. Q. He told you, you had to get out? A. Yes, sir. Q. Whether you divided or not? A. Yes, sir. Q. The fact remains that you did divide up the property as Landey suggested before he left? A. I had to do that or lose it. Q. He did not serve you with a writ of ejection, that is true? A. I don't remember of it now, as far as that is concerned, I would think though I would have to move when an officer told me I would have to get out. Q. You did that in compliance with the understanding? A. I did it in compliance with the law, as he said, they were going to move me out in the big road. Q. State whether or not there was ever a settlement between you and Hanes other than you have testified to about the division of the stock. A. No, sir. Q. Nothing? A. No, sir, there never was such a thing mentioned."

Landey testified that, before he went to serve the writ, Mr. Hanes asked him to take a proposition to the defendants to divide the property, and get off the place; that he carried this proposition to the defendants; that the proposition was as follows: To go to See and divide the property; that is,

he had two calves and one was larger than the other, and just divide them, but he could have his choice of the two provided he would move off the place; that he carried this proposition to See, and that See agreed to do this and divided up, and afterward moved off; that he accepted the proposition Mr. Hanes sent to him, took his choice of the stock and moved off. This witness further testifies:

"I had the writ in my pocket. I told See that Hanes told me to tell him that I came out there to divide the stock, and that Hanes would rather have him move off peaceably than to put him off, and I was authorized to divide the stock up and he was to take his first choice out of it, and we did so."

Hanes testifies that See vacated the premises; that he took and sold his share of the property on the place, and left the landlord's share on the place.

Mrs. See says that she was present at the time that Landey, the constable, was there, and she testifies as follows:

"Mr. See asked him what his proposition was, and he told us that we were to have so many of the pigs, and one of the calves. We were to take our choice of the calves. There were seven pigs, and one had to take three, and the other four, and Mr. Landey (the constable) was to pick the pigs which was to be the four smallest, and which was to be the three biggest. That was left to Mr. Landey, and Mr. See says, 'Well, what about the rest of the stock. I have an interest in it,' and he says (Landey), 'I have got no authority over this. You are to take this proposition, or I am here with the wagon to move you out.' Well, Mr. See and him wrangled over it a while, and Mr. See said it wasn't the right proposition, and so on. Mr. Landey says, 'My time is precious, I am fooling away my time for nothing, and you will either have to take the proposition or I will have to start to move you.' That was all there was to it, and Mr. See says, 'Of course, I will have to.' Mr. See further said, 'If that is what I have to do, I've got to do it.' He didn't say he wanted to do it or that he was willing

to do it. This was in the spring. We had the corn planted, we had the millet seed bought but not sown. I think there was 14 acres of corn. We had some garden planted also."

This is all the testimony material to the controversy here. The question for our determination is whether or not, under this record, it is shown that the defendants, by their conduct since the entry of judgment in the justice court, have waived the right to prosecute their appeal in the district court.

That a voluntary performance of a judgment waives the right of review on appeal is, as a general proposition, well settled. The apparent conflict in the authorities is due not so much to a failure to recognize the general principle as it is in the application of the principle. The courts differ as to what constitutes a voluntary performance of the judgment so as to preclude the right of review upon appeal. We find it necessary to review somewhat the authorities, before announcing our conclusion as to what the rule is that should be applied to the rights of the parties under the controversy here submitted. In *Borgalthous v. Farmers' & Merchants' Ins. Co.*, 36 Iowa 250, judgment was rendered against the garnishee in favor of the plaintiff for the amount of proceeds of certain notes in his hands. Leedham, the garnishee, appealed from the judgment. A motion to dismiss the appeal was filed on the ground that Leedham had paid the amount of the judgment rendered against him. The court, in disposing of the case, said:

"Neither can the garnishee, Leedham, be heard to deny in this court the correctness of the judgment. By submitting thereto and discharging it by voluntary payment, he waived all errors that may have existed in the record. It would be a practice resulting in hardship, abuse and inconvenience to permit parties to appeal after fully performing the orders and judgments of the court. By the act of payment and performance, they are estopped to deny the sufficiency of the adjudication against them. . . . A performance is certainly an act of assent or waiver of errors, more emphatic and expressive. It has been ruled by this court that a party can-

not accept the benefit of an adjudication, and yet, alleging it
to be erroneous, appeal therefrom'' (citing authorities).
''The obvious reason of this decision is that the party's act
estops him from objecting to the judgment, having acquiesced
in its performance or discharge by the other party. The same
principle will cut off the right of a party defendant, after
paying a judgment, to appeal therefrom.''

In *Burrows v. Stryker*, 45 Iowa 700, there is involved the
question as to whether or not a payment was voluntary. It
appears that a special execution was issued for the sale of
certain real estate. This was issued at the instance of the
plaintiff. The defendant paid the amount of the judgment
to the clerk under protest, reserving, so far as he could by
such protest, his right to prosecute his appeal which had been
taken before the issuance of the execution. This court said:

''The money was paid to prevent a sale of the property
under the execution. We do not regard this as a voluntary
payment, nor did it in any manner affect the appeal or the
right to further maintain it.''

*Dudman v. Earl*, 49 Iowa 37, simply holds that, where
the plaintiff succeeds in recovering a portion of his claim and
appeals from the action of the court in denying a portion of
his claim, and the portion found in his favor is paid into the
hands of the clerk and accepted by him, this does not defeat
his right to maintain an appeal as to the disputed question,
and it was held that he might maintain the action, notwith-
standing that he had accepted a portion of the judgment
found in his favor.

In *Hintrager v. Mahoney*, 78 Iowa 537, it is said:

''In the district court the amount necessary to redeem
fully at that time was ascertained, and, as a condition upon
which the decree favorable to defendants was entered, they
were to pay the ascertained amount into court for plaintiff
within a specified time. From that part of the judgment the
defendants appealed. However, within the required time, the
amount was paid. The payment was a performance of the

judgment, and from a judgment which had been performed an appeal will not lie."

*Sample v. Collins,* 81 Iowa 23, involved the right to the possession of land. It appears that, after the decision of the court had been announced in favor of the appellee, and the amount of the supersedeas bond was being considered, it was suggested that the possession of the property should be delivered to the appellee, and that if that were done, the amount of the supersedeas bond would be greatly reduced. Thereupon, the appellant delivered the possession of the land to the appellee, and then a motion was made by appellee to dismiss the appeal on the grounds that appellant had performed the judgment, and had surrendered possession to him. The court said:

"It was simply a compromise by which to lessen the amount of the *supersedeas* bond. . . . The real estate which is the most important feature of the contention is still subject to the final decree that may be entered," and the motion was dismissed.

It was held that this was not a voluntary performance of the judgment to such an extent as to defeat the right of review in the appellate court.

In *Gilbert v. Adams,* 99 Iowa 519, a motion to dismiss the appeal was filed because the appellant had recognized the validity of the judgment, and had paid a portion thereof. It appears in this case that no supersedeas bond was filed. An execution was issued and levied upon a large amount of personal property, and the property advertised for sale. Shortly before the sale, the parties entered into a written agreement, by which it was agreed that the property levied on should be sold, and the amount realized applied on the execution; that, in pursuance of this agreement, the property was sold, and $66 applied upon the judgment. The court said:

"Conceding that" these facts may be shown as they were shown, "we do not think there was such a performance of the judgment by the appellant as to estop him from prosecuting

his appeal. His payment was not voluntary, and was not such a recognition of the judgment as ought to estop him from proceeding with the appeal.''

In *Manning v. Poling,* 114 Iowa 20, it is said:

''It is often difficult to determine what will amount to coercion sufficient to render payments involuntary.'' While in this case the authorities are reviewed pro and con quite fully, the case really turned upon the question whether the plaintiff had a plain and speedy remedy to protect his rights without paying the judgment. It was held that he might have had a restraining order, and that, by securing a restraining order, he could have saved the possession of his property and been fully protected; that payment was not necessary to protect his possession, and, therefore, his conduct was voluntary. The court said: ''On giving the security which may have been required, Ferguson's possession could have been fully protected by a restraining order from this court. As this avenue was open to him, his payment was voluntary.''

See, also, *Mississippi & M. R. Co. v. Byington Co.,* 14 Iowa 572; see, also, *Green v. Hall,* 43 Neb. 275 (47 Am. St. Rep. 761). In this case, there was an appeal from a deficiency judgment and costs. An execution was issued on the judgment and placed in the hands of the sheriff. A levy was made, and a date fixed for the sale of the property. The execution was returned paid in full, and on the execution a receipt for the costs. All the payments were made while the sheriff held the execution. The appellee, after the case had been submitted for final determination, filed a motion to dismiss the appeal, for the reason alleged that the judgment had been voluntarily paid by one of the appellants. This was resisted on the showing made that the execution was, at the time of the payment, in the hands of the sheriff; that the property was advertised for sale; that the payments were made to avoid the sale of the lots advertised, and it was claimed not to be voluntary. There was no supersedeas to suspend the enforcement of the judgment. The court said:

"Under these circumstances, a sale of the property advertised would have vested in the purchaser a title which could not be affected by the reversal."

It was further said:

"The right of a judgment debtor to have an appeal determined, notwithstanding payment thereof has been coerced by legal process during its pendency, is sustained by" the following authorities (citing authorities).

In *Lumaghi v. Abt*, 126 Mo. App. 221 (103 S. W. 104), it was held that, where a judgment against a person had been entered, and he paid it solely to remove the lien from his property and prevent several prospective real estate deals from being frustrated, the payment did not prevent review upon appeal. It is said:

"If he cannot resist it when execution is attempted, he may as well pay it without execution to save expense and delay; and will not, in such case, be held to have paid voluntarily. The discharge of the judgment in controversy for the purpose of relieving Richardson of his embarrassment did not preclude appellants from suing out a writ of error."

And it was held that there was a distinct difference in the holding that a party who had recovered a judgment could not have it reversed on error, after receiving satisfaction, and the situation of a party against whom a judgment has been given. In the one case, the party is subject to execution and might be forced to pay it before it was reviewed on appeal; whereas, the party in whose favor it was entered is not exposed to the execution.

These cases practically hold that a party may protect his rights from sacrifice by forced sale on execution, or by writ of ouster, by performing the judgment, and thereby saving himself from further embarrassment and costs, and, by so doing, he does not, under such circumstances, release his right to have the case reviewed on appeal. It is said, however, in the last-mentioned case:

"If the defendant should agree not to prosecute the

appeal, and, in consideration of such an agreement, the creditor should abate part of the recovery, extend the time of payment, or do some other act of similar character, then, the right of appeal would be waived, since the controversy would be terminated.''

See authorities cited in last case, *supra,* as sustaining the proposition. For a fair review of the authorities, see notes to *McKain v. Mullen,* (W. Va.) 29 L. R. A. (N. S.), page 1. See, also, *Nashville, C. & St. L. R. Co. v. Bean's Executor,* 128 Ky. 758 (109 S. W. 323; 129 Am. St. Rep. 333). In that case, plaintiff recovered a money judgment. The defendant, without superseding the execution of the judgment, prosecuted his appeal. Execution was issued upon the judgment and levied upon certain of appellant's property. In that case, it was said:

''The appeal does not affect the judgment until it is reversed. Hence, if the appellant were unable to give the supersedeas bond . . . in order to obtain a stay of the execution . . . he would be under the necessity of suffering his property to be seized and sold by the sheriff, with added costs and possible sacrifices. Yet, in that event, his right of appeal would not be affected, as otherwise the right of appeal would be valuable only to the rich, who could make the supersedeas bond, and to the very poor, who were execution proof. What one may be compelled to do, he may do without compulsion, without impairing his legal rights.''

It was held in that case that the payment of a judgment under such circumstances did not abate the appeal. In *Warner Bros. Co. v. Freud,* 131 Cal. 639 (63 Pac. 1017; 82 Am. St. Rep. 400), it was held that a party against whom a judgment had been rendered is not prevented from appealing by the fact that he has paid the judgment, unless such payment was by way of compromise or with an agreement not to take an appeal. Of course, there are some cases holding to the extreme doctrine that, no matter what the circum-

stances are attending the payment, the payment discharges the judgment, and there is, therefore, nothing for the Supreme Court to review; but that is not the doctrine in this state.

We think that the case now under consideration comes within the rule laid down by this court in *Burrows v. Stryker,* 45 Iowa 700, and *Gilbert v. Adams,* 99 Iowa 519, hereinbefore cited; *Green v. Hall,* 43 Neb. 275 (47 Am. St. Rep. 761).

Inasmuch as the court sustained the plaintiff's motion and instructed the jury to return a verdict for the plaintiff, it is our duty to give to the evidence the construction most favorable to defendants' contention which the record permits. With this idea in view, we have the record disclosing the following facts: That, after judgment was entered in the justice court, an execution was issued to the constable directing him to remove the defendants from the premises forthwith, ''and that of the goods and chattels of the defendants, not exempt, he caused to be made the costs by distress and sale thereof according to law;'' that, with this writ in his possession, he went to the defendants' premises; that he came with a big wagon and said that he had a proposition from the plaintiff as to just what the plaintiff would do; that he was asked what his proposition was, and he said that the defendants were to have so many of the pigs and one of the calves—the defendants were to have the choice of the calves; that there were seven pigs, and one had to take three and the other four; that he, the constable, was to pick the four smallest pigs and separate them, and the three largest pigs. He was asked, ''What about the rest of the stock?'' He was told that the defendants had an interest in it. He said that he had no authority as to this, and then said:

'' 'You are to take this proposition or I am here with a wagon to move you out. My time is precious. I am fooling away my time for nothing, and you will either take the proposition, or I will have to start to move you.' Mr. See said, 'Of course, then, I will have to do it;' that it was not his choice; that 'If I have to do it, why I have to do it;' that, at

the time, they had corn planted on the place, and had millet seed bought, but not sown; that there were 14 acres of corn and some garden planted.''

This was Mrs. See's testimony.

Mr. See testified that, when the constable came, he said ''he fetched a proposition from the plaintiff.'' When asked the terms, he said:

''He (meaning the plaintiff) has agreed to go ahead and divide the hogs and calves, and he sent me down to see if I could get a division.''

He was then told by the defendants that they had no right to make a division with him of the stock, and that they had an interest in all the stock; he did not mention anything in regard to the rest of the stock, except the two calves and five pigs.

''He told me, 'You could go to work and have your choice out of the pigs, have four or three. I could have the four smallest or the three largest ones in the division of the pigs; that I could also have the first choice of the calves, and said, 'If you don't accept the proposition, I will move you out in the woods, or in the big road, and I fetched my team for that purpose.' He told me that if I did not accept the proposition, he had a man and was going to take all of the stock, and had Charlie Harvey hired to come down to get the hogs and drive the cattle out. He told me I had to get out whether I divided or not.''

Defendants got out. Can it be said that they did this voluntarily?

Section 4220, Code, 1897, provides:

''An appeal or writ of error, taken from the action of a justice of the peace in such action in the usual way, if the proper security is given, will suspend the execution for costs, and may, with the consent of the plaintiff, prevent a removal under execution, but not otherwise.''

The proposition was squarely before the defendants either to get out or be put out. It appears that, by the judgment of

the court, it was determined that they must get out forthwith; that an execution was issued, directing the constable to put them out forthwith. He had already appealed from the order of the justice. If the plaintiff had put him out under the writ, there could be no question about his right to maintain the appeal. The fact that he obeyed the mandate of the court and removed without being forcibly ejected certainly does not put him in any worse position than if he had been removed. Under this record, it is apparent that the removal would have followed if he had not obeyed the mandate of the court without being forcibly ejected. The plaintiff fixed the terms upon which he must get out, and gave him no choice in the matter but to accept the proposition or be removed. In no sense can it be said that the evidence conclusively shows that there was a voluntary settlement of or submission to the judgment of the court which would prevent review upon appeal, under any of the authorities cited. The division of the property was not involved in the ejectment suit. He was entitled, under his contract, to an equitable division of the property, whether he stayed or whether he was removed. He gained nothing by removing. Further than that, there was a judgment against him for costs. No provision was made for these costs, and the district court, on dismissing the case, entered judgment against him for all the costs.

We think that the district court erred in not determining this case upon the merits, and in dismissing the defendants' case and entering judgment against them upon the allegations of the supplemental petition.

The case is therefore—*Reversed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.